IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 14, 2004
Heard at Knoxville

## ALI ALVDU MOHAMMAD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2002-B-935    Cheryl Blackburn, Judge**

---

**No. M2004-00493-CCA-R3-PC - Filed January 11, 2005**

---

The petitioner, Ali Alvdu Mohammad, appeals the trial court's denial of post-conviction relief. The issues presented for review are whether the petitioner's plea of guilt was knowingly and voluntarily entered and whether the petitioner was denied the effective assistance of counsel. The judgment is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed**

GARY R. WADE, P.J., delivered the opinion of the court, in which J. CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

David R. Whittaker, Nashville, Tennessee, for the appellant, Ali Alvdu Mohammad.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 28, 2002, the petitioner was indicted for one count of conspiracy to sell more than 300 grams of cocaine in violation of the Drug-Free School Zone Act and one count of possession with intent to sell more than 300 grams of cocaine. See Tenn. Code Ann. §§ 39-17-417, -432. The grand jury had returned a total of eleven counts in the indictment against the petitioner and five co-defendants. Pursuant to a plea agreement, the state dismissed the conspiracy charge and the petitioner entered a guilty plea to possession with intent to sell more than 300 grams of cocaine. The trial court imposed a Range I sentence of fifteen years. There was no direct appeal.

On March 20, 2003, the petitioner filed a petition for post-conviction relief alleging, among other things, that he was denied the effective assistance of counsel. The petitioner later amended his petition to include allegations that his plea was neither knowingly, voluntarily, nor intelligently made. The amended petition unveiled the claim that but for the ineffectiveness of his counsel, he

would not have entered into the plea agreement. It was the contention of the petitioner that had he gone to trial, the state would have been unable to produce evidence establishing that he had either actually or constructively possessed or possessed with the intent to sell the cocaine, an essential element of the crime. The petitioner also argued that his trial counsel misinformed him about the potential length of the sentence and failed to advise him of the law governing accomplice testimony. Further, the petitioner contended that trial counsel was ineffective for having failed to discover and consider exculpatory impeachment evidence and inconsistent statements contained within police reports.

After the appointment of counsel, the petition was again amended to include allegations that because of a lack of skill in the English language, the petitioner was unable to fully comprehend the plea agreement without the assistance of an interpreter. The amended petition also included charges that trial counsel was ineffective for having failed to adequately investigate the facts and having failed to adequately prepare a defense.

At the evidentiary hearing, the petitioner, an Iraqi Kurd who had lived in the United States since he was ten years old, was afforded an interpreter. While the petitioner testified in English for the most part, the transcript includes notations indicating when the petitioner answered in the Kurdish language. It was his contention that when he was placed in the Department of Correction, he tested at a third-grade English level, but that after eight months in prison he had improved his skills to an eighth grade level. The petitioner also claimed that he met with his trial counsel only three times prior to trial, that trial counsel failed to explain the nature of the charges, and that trial counsel had coerced a guilty plea by suggesting that in view of the events of September 11, 2001, a jury would likely convict because he was of Iraqi heritage. He also contended that his trial counsel suggested that he accept the plea because if he were to be convicted on the Drug-Free School Zone conspiracy charge, he would have to serve one hundred percent of his sentence before being eligible for release. The petitioner asserted that he asked for his trial counsel to arrange for an interpreter at the guilty plea hearing and that trial counsel answered that it was not necessary, instructing the petitioner to simply answer, "Yes," to every question asked by the trial judge.

On cross-examination, the petitioner acknowledged that he had made bail on the date of his arrest. He also admitted that he had said more than "yes" when questioned by the trial judge at his sentencing hearing. The petitioner conceded that at that time he had testified under oath that his trial counsel had not forced him to enter the guilty plea. While insisting that he did not understand the charge of conspiracy at the time of the guilty plea, the petitioner did admit that he understood the difference between a fifteen-year sentence at 30% and a fifteen-year sentence at 100% release eligibility.

Courtney Misere, a close friend to the petitioner, accompanied the petitioner at his request to the submission hearing but left before the guilty plea. She stated that before she left the hearing, trial counsel had informed her that the petitioner would get another court date. She recalled that the petitioner had said that he was being told to plead guilty, to which she responded, "[D]on't sign anything." According to Ms. Misere, the petitioner was in jail when she next heard from him. On

cross-examination, she confirmed that she generally spoke to the petitioner in English and that she could only say "some words in Kurdish." It was nevertheless her opinion that the petitioner did not understand what he was doing when he signed the guilty plea documents.

Trial counsel, who had practiced criminal law for fourteen years and described "99%" of his clients as either immigrants or new Americans, testified that he and the petitioner never had any difficulty in terms of communicating. He recalled that prior to trial, he had filed for and received discovery materials, provided the petitioner with a copy, and discussed with him the information received. Trial counsel stated that his primary concern was the school zone charge and the potential length of the sentence, especially because the petitioner had recently become a father. It was trial counsel's opinion that the state had made its best possible offer before he recommended acceptance of the plea agreement. He acknowledged that he did discuss the possible ramifications of 9/11 in the context of a jury trial but insisted that he never coerced or threatened the petitioner in any way. It was his assessment that an interpreter was unnecessary in view of the petitioner's ability to communicate in English.

The transcript of the guilty pleas was made a part of the evidence. The facts offered by the state were as follows:

Had this matter . . . gone to trial the [s]tate would have presented witnesses who would have testified that on January 8th of 2002 a codefendant in this matter, a Mr. Jerry Amomele (phonetic), set up a deal to sell a half a kilo of cocaine to a vice [squad] informant for $12,500. Mr. Amomele told the informant to meet him . . . at the Piccadilly Row Apartments . . . in Davidson County. . . . [L]ater Mr. Amomele called back to the informant and said to meet him at the Murfreesboro Road Burger King, also here in Davidson County.

Officers followed [c]odefendant Amomele and [c]odefendant Shaw to the Burger King, where they briefly met with the informant. Amomele got into the informant's car where the informant then gave Amomele $12,500 in previously photocopied buy money. Mr. Amomele gave that money to Shaw. The [confidential informant] and Amomele and Shaw then left and were followed to 5154 Linbar Drive . . . in Davidson County. A short time later a white Mercury automobile driven by [the petitioner] did arrive at the Linbar Drive address. This car was also seen at the Piccadilly Row address earlier in the day. Officers saw [the petitioner] handing an item to Shaw. Shaw and the petitioner then got into the same vehicle. They were stopped by vice later on as they were leaving to get the cocaine. The $12,500 in previously photocopied buy money was found on [the petitioner's] person.

During the proceeding, the petitioner acknowledged the truth of the state's theory. It was his contention, however, that the $12,500.00 was in the car rather than on his person. While the petitioner pointed out to the trial judge that he did not like any of his alternatives, he confirmed that the plea of guilt and her acceptance of the plea agreement was his best possible choice.

The post-conviction court filed an extensive order denying relief and quoting portions of the transcript of the guilty plea proceeding. In summary, the post-conviction court found that the guilty plea was knowingly and voluntarily made and that trial counsel had provided the petitioner with the effective assistance of counsel. The post-conviction court also determined that the petitioner had failed to demonstrate the presence of any exculpatory evidence or any other inconsistencies that might have demonstrated that his trial counsel's performance was deficient or that he would not have pled guilty absent those deficiencies.

In this appeal, the petitioner first asserts that because he did not understand the nature of the plea, the plea was neither knowingly nor voluntarily entered. In support of that argument, he asserts that he should have been provided an interpreter before being allowed to enter into the plea agreement. Finally, the petitioner contends that trial counsel, who expressed concern in the wake of the events of September 11, 2001, told him that a jury trial would result in conviction "based upon the color of his skin." The petitioner asserts that the advice qualifies as a threat, precluding a voluntary decision to enter into the plea.

In a post-conviction proceeding, the petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the trial court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The burden is on the petitioner to show that the evidence preponderated against those findings. Clenny v. State, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." Strickland v. Washington, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

> Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996). As to guilty pleas, the petitioner must establish a reasonable probability that, but for the errors of his counsel, he would not have entered the guilty pleas and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985).

When evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 30 (1970). In Boykin v. Alabama, 395 U.S. 238 (1969), the Court ruled that defendants should be advised of certain constitutional rights, including the right against self-incrimination, the right to confront witnesses, and the right to trial by jury. Id. at 243. If the proof establishes that the petitioner was aware of his constitutional rights, he is entitled to no relief. Johnson v. State, 834 S.W.2d 922, 926 (Tenn. 1992).

In our view, the evidence does not preponderate against the post-conviction court's finding that the petitioner received the effective assistance of counsel and that he entered a knowing and voluntary plea of guilt. The petitioner has been unable to establish any level of miscommunication with his trial counsel, what exculpatory evidence was undiscovered, or how counsel coerced the guilty plea. The petitioner has failed to establish any deficiency in the performance of his trial counsel and has also failed to demonstrate that he would not have pled guilty absent any deficiencies in performance.

As observed by the state, the petitioner appeared to have understood the questions of counsel during the evidentiary hearing. There were only a few occasions when the interpreter intervened. Other testimony established that the petitioner understood the English language. Moreover, the trial judge saw and heard the witness firsthand and specifically concluded that the petitioner was able to understand the nature of his plea and the consequences thereof. Of particular importance is that the petitioner understood the difference between a Range I sentence of fifteen years with a release eligibility at 30% of service and a sentence at 100%, which had to be fully served before release.

The petitioner has also failed to establish that his trial counsel coerced him into accepting a guilty plea. It is the professional responsibility of defense counsel to not only communicate with his client, investigate the circumstances, and prepare an appropriate defense, but also to advise as to any surrounding circumstances which might have any effect upon the trial. In our view, the more information that counsel was able to provide the petitioner before his acceptance of any plea agreement, the better. When the accused is fully aware of the potential result of a trial, he is more likely to make an informed, voluntary plea of guilt.

In summary, the evidence in the record does not preponderate against the post-conviction court's conclusion that the petitioner was effectively represented by counsel and knowingly and voluntarily entered a plea of guilt. Accordingly, the judgment of the post-conviction court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE